**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| KIMBERLY HENSHAW, AMBER S. PARKER, and MATTHEW A. SLATE individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>DOMINION DENTAL SERVICES USA, INC., a Virginia corporation; DOMINION DENTAL SERVICES, INC., a Virginia corporation, DOMINION DENTAL USA, INC., a Virginia corporation, and DOES 1 to 10, inclusive,<br><br>       Defendants. | CIVIL ACTION No._____<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Kimberly Henshaw, Amber S. Parker, and Matthew A. Slate ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action based upon their personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

### NATURE OF THE ACTION

1.      Defendants Dominion Dental Services USA, Inc., Dominion Dental Services, Inc., and Dominion Dental USA, Inc. ("Defendants" or "Dominion") are collectively an insurance company, offering dental and vision insurance.  Thousands of individuals come to Dominion every day as an insurer for their dental and vision treatment, trusting Dominion with their sensitive medical and personal information.

2.      These individuals reasonably expect the highest level of protection for their private identifiable information, when giving highly sensitive information such as their Social Security numbers and medical information to Defendants.  What these patients do not expect,

1

and did not expect, during the period between August 25, 2010 and April 24, 2019, was that their personal and sensitive information would be harvested by unauthorized individuals.

3.      Plaintiffs, individually and on behalf of those similarly situated persons (hereafter, "Class Members"), brings this class action to secure redress against Defendants for their reckless and negligent violation of patient privacy rights.  Plaintiffs and Class Members are individuals who were insured by Dominion during the period of August 25, 2010 to April 24, 2019.

4.      Plaintiffs and Class Members suffered significant injuries and damages.  The security breach compromised the full names, addresses, email addresses, dates of birth, Social Security numbers, member ID numbers, group numbers, subscriber numbers, and other Private Identifiable Information (referred to collectively as "PII") of Plaintiffs and the Class Members.

5.      As a result of Defendants' wrongful actions and inactions, unauthorized individuals gained access to and harvested Plaintiffs' and Class Members' PII.  Plaintiffs have been forced to take remedial steps to protect themselves from future loss.  Indeed, all Class Members are currently at a very high risk of identity theft and/or credit fraud, and prophylactic measures, such as the purchase of credit monitoring, are reasonable and necessary to prevent and mitigate future loss.

6.      As a result of Defendants' wrongful actions and inactions, patient information was stolen.  Many of Dominion's insureds have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

7.      Further, despite the fact that the breach first occurred on August 25, 2010, and was discovered on April 24, 2019, Defendants did not inform their customers of the data breach until late June 2019.  During that time—almost nine years after the breach first occurred—Defendants sent a letter to their customers informing them that "On April 24, 2019, through our investigation of an internal alert, with the assistance of a leading cyber security firm, we determined that an unauthorized party may have accessed some of our computer servers. The unauthorized access may have occurred as early as August 25, 2010."  Breach Notification,

2

attached hereto as **Exhibit A**.

## THE PARTIES

8.      Plaintiff Kimberly Henshaw is a Virginia citizen residing in Hopewell, Virginia. Plaintiff Henshaw is an insured of Dominion who gave her PII to Dominion.  Plaintiff Henshaw entered a contract with Dominion which incorporated a contractually binding privacy policy.

9.      Plaintiff Amber S. Parker is a Virginia citizen residing in Roanoke, Virginia. Plaintiff Parker is an insured of Dominion who gave her PII to Dominion.  Plaintiff Parker entered a contract with Dominion which incorporated a contractually binding privacy policy.

10.     Plaintiff Matthew A. Slate is a Virginia citizen residing in Newport News, Virginia.  Plaintiff Slate is an insured of Dominion who gave his PII to Dominion.  Plaintiff Slate entered a contract with Dominion which incorporated a contractually binding privacy policy.

11.     Plaintiffs are informed and believe that, as a result of the data breach that took place at Dominion, Plaintiffs' PII was accessed by hackers. As a result, Plaintiffs have to purchase a credit and personal identity monitoring service to alert them to potential misappropriation of their identities and to combat risk of further identity theft.  At a minimum, therefore, Plaintiffs have suffered compensable damages because they will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss. Exposure of Plaintiffs' PII as a result of the data breach has placed them at imminent, immediate and continuing risk of further identity theft-related harm.

12.     Defendant Dominion Dental Services USA, Inc. is a Virginia corporation with its principal offices located in Arlington, Virginia. It may be served with process through its registered agent: Corporation Service Company, 100 Shockoe Slip F1 2, Richmond, Virginia 23219.

13.     Defendant Dominion Dental Services, Inc. is a Virginia corporation with its principal offices located in Arlington, Virginia. It may be served with process through its registered agent: Corporation Service Company, 100 Shockoe Slip F1 2, Richmond, Virginia 23219.

14.     Defendant Dominion Dental USA, Inc., is a Virginia corporation with its principal offices located in Arlington, Virginia. It may be served with process through its registered agent: Corporation Service Company, 100 Shockoe Slip F1 2, Richmond, Virginia 23219.

15.     Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs and Class Members as set forth below.

16.     At all times Defendants acted as alter egos of each other such that the corporate entity must be bypassed to avoid an injustice. Defendants operate a single business, offering dental and vision insurance, through a single website, https://www.dominionnational.com/, with only a single headquarters, located in Arlington, Virginia. On information and belief, the same officers represent both companies. Defendants are thus operated as a single entity. On information and belief, the entities commingle funds and other assets, fail to maintain adequate records of minutes, are owned and controlled by the same parties, operate as a mere shell, instrumentality, or conduit of each other, disregard legal formalities, and fail to maintain an arm's length relationship.

17.     As used herein, "Defendants" shall refer to Dominion and Does 1 to 10, collectively.

**JURISDICTION AND VENUE**

18.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since some of the Class Members are citizens of a State different from the Defendants, there are more than 100 putative class members, and the amount in controversy exceeds $5 million.

19.     The Court has personal jurisdiction over Defendants because Plaintiffs' and

Class Members' claims arise out Defendants' business activities conducted in the State of Virginia, and because Defendants are headquartered in Virginia.

20.      Venue is appropriate in this District because, among other things: (a) Plaintiffs reside in this District, (b) Defendants maintain their headquarters in this District, where they conduct substantial business; (c) Defendants directed their activities at residents in this District; and (d) many of the acts and omissions that give rise to this Action took place in this judicial District.

21.      Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a large amount of their business in this District, and because Defendants have substantial relationships in this District.

## FACTUAL ALLEGATIONS

### A.   *The Data Breach*

22.      Defendants Dominion offer dental and vision insurance to patients across the country.  In late June 2019, Defendants issued a letter stating:

> On April 24, 2019, through our investigation of an internal alert, with the assistance of a leading cyber security firm, we determined that an unauthorized party may have accessed some of our computer servers. The unauthorized access may have occurred as early as August 25, 2010. . . . We have undertaken a comprehensive review of the data stored or potentially accessible from those computer servers and have determined that the data may include enrollment and demographic information for current and former members of Dominion National and Avalon vision.

Ex. A.

23.      Dominion made repeated promises and representations to Plaintiffs and the Class Members on its website and in physical form, that it would protect its insureds' PII from disclosure to unauthorized third parties.  Dominion maintains two privacy policies, one for its dental plan enrollees and one for its vision plan enrollees.  For the dental plan enrollees, the privacy policy states:

> One of our primary goals is to safeguard your PHI [defined as "Protected Health Information"]. We have policies and procedures in place throughout our organization to protect your information.  These policies and procedures include:  training all employees on appropriate uses, disclosures, and protection of PHI; limiting employee system access to only the PHI needed to perform job duties; ensuring secure disposal of confidential

information; using unique user IDs and passwords, etc.

Dominion Dental Privacy Policy, attached hereto as **Exhibit B**.  The Dominion Dental Privacy Policy proceeds to list several categories of entities to which PII may permissibly be shared, promising that the sharing of PII will only be to members of these categories.

24.    The privacy policy for vision plan enrollees is identical to that for dental enrollees.  *See* Dominion Vision Privacy Policy, attached hereto as **Exhibit C**.

25.    Dominion promised that it would protect its insureds' PII, and would not disclose Plaintiffs' and the Class Members' PII to any third parties, apart from those set forth in the Privacy Policy.  In fact, it allowed hackers to obtain it.

### B. Defendants Had an Obligation to Protect Personal Information under Federal Law.

26.    Defendants are entities covered by HIPAA (*see* 54 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information").

27.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."  45 C.F.R. § 164.502.  HIPAA also requires that Defendants implement appropriate safeguards for this information.  45 C.F.R. § 164.530(c)(1).  HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties.  45 C.F.R. § 164.404; 45 C.F.R. § 164.402.

28.    Additionally, HIPAA requires that Defendants:
(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);
(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);
(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);
(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);
(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45

C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

29.     Defendants are prohibited by the Federal Trade Commission Act (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."  The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act.  *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015).

### D.  Applicable Standards of Care

30.     In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

31.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

32.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

33.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to implement processes that would detect a breach of their

data security systems in a timely manner.

34.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to act upon data security warnings and alerts in a timely fashion.

35.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

36.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

37.     Defendants owed a duty of care to Plaintiffs and the Class Members, who entrusted them with their highly sensitive PII, because they were foreseeable and probable victims of any inadequate data security practices.  Defendant Defendants collected PII from Plaintiffs and the Class Members directly.  Defendants Optum and AMCA received the PII from Defendants and other parties with the understanding that Plaintiffs and the Class Members expected their PII to be protected from disclosure.  Defendants knew that a breach of its data systems would cause Plaintiffs and the Class Members to incur damages.

### E.  Stolen Information Is Valuable to Hackers and Thieves

38.     It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto is well known.  Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the PII of Plaintiffs and Class Members.

39.     Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card

holder data of 40 million of Target's customers. *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies /target-credit-card/. DataCoup is, in contrast, just one example of a legitimate business that pays users for personal information. *See* http://money.com/money/3001361/datacoup-facebook-personal-data-privacy/.

40. PII is highly valuable to hackers. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. PII that is stolen from the point of sale are known as "dumps." *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/. PII can be used to clone a debit or credit card. *Id.*

41. Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

42. In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[1]

43. As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[2]

---

[1] Identity Theft and the Value of Your Personal Data, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data.

[2] Brian Krebs, The Value of a Hacked Email Account, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/.



44.    Hacked information can also enable thieves to obtain other personal information through "phishing."    According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[3]

### D. The Data Breach Has Resulted and Will Result in Identity Theft and Identity Fraud

45.    Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiffs and Class Members.

46.    The ramifications of Defendants' failure to keep Plaintiffs' and Class Members' PII secure is severe.    According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year."    "Someone Became an Identity

---

[3] https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf

Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html.

47.     In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again.  On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."  *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf.    In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

48.     A person whose PII has been obtained and compromised may not know or experience the full extent of identity theft or fraud for years.  It may take some time for the victim to become aware of the theft or fraud.  In addition, a victim may not become aware of fraudulent charges when they are nominal, because typical fraud-prevention algorithms fail to capture such charges.  Those charges may be repeated, over and over again, on a victim's account, without notice for years.

49.     The damage from PII exposure is particularly acute in the medical context.  A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.  *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010, 5:00 AM), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/. Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.  *Id*.

### F.   Annual Monetary Losses from Identity Theft are in the Billions of Dollars

50.     According to the BJS, an estimated 17.6 million people were victims of one or

more incidents of identity theft in 2014.  Among identity theft victims, existing bank or credit card accounts were the most common types of misused information.  *Id*.

51.     Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013.  There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

See  GAO,  Report  to  Congressional  Request,  at  33  (June  2007),  *available  at* http://www.gao.gov/new.items/d07737.pdf.

52.     As a result of the data breach, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information, they already obtained in an effort to procure even more PII. Plaintiffs and Class Members are presently incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies. In addition, Plaintiffs and Class Members now run the risk of unauthorized individuals creating credit cards in their names, taking out loans in their names, and engaging in other fraudulent conduct using their identities.

### G.   *Plaintiffs and Class Members Suffered Damages*

53.     The exposure of Plaintiffs' and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by their contracts with Plaintiffs and the Class Members, and state and federal law. The data breach was also a result of Defendants' failure to establish and implement appropriate

administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and state and federal law

54.    Plaintiffs' and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.  Defendants did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

55.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

56.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    The improper disclosure, compromising, and theft of their PII;

b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-party hackers and misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

c.    The untimely and inadequate notification of the data breach;

d.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

e.    Ascertainable losses in the form of deprivation of the value of their PII, for which

13

there is a well-established national and international market; and

f.     Overpayments to Defendants for any fees paid by Plaintiffs and Class Members for insurance as implied in the fees paid to Defendants by Plaintiffs and Class Members that some amount of the fees would be applied to the costs of implementing reasonable and adequate safeguards and security measures that would protect their PII, which Defendants failed to implement and, as a result, Plaintiffs and Class Members did not receive what they paid for and were overcharged by Defendants.

## CLASS ACTION ALLEGATIONS

57.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated under Rule 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure. The Class is divided into two Classes as follows:

The Virginia Class:

All persons residing in the State of Virginia who contracted with Dominion National, LLC, Dominion Dental Services USA, Inc., Dominion Dental Services, Inc., and/or Dominion Dental USA, Inc. and its related companies, (collectively, "Dominion") during the time period of August 25, 2010 to April 24, 2019, and whose Personal Identifying Information was compromised as a result of the data breach discovered by Dominion on or about April 24, 2019.

The Nationwide Class:

All persons residing in the United States who contracted with Dominion National, LLC, Dominion Dental Services USA, Inc., Dominion Dental Services, Inc. and/or Dominion Dental USA, Inc. its related companies, (collectively, "Dominion") during the time period of August 25, 2010 to April 24, 2019, and whose Personal Identifying Information was compromised as a result of the data breach discovered by Dominion on or about April 24, 2019.

58.    Excluded from the Class are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate

families.  Plaintiffs reserves the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

59.    *Numerosity*. The members of the Class are so numerous that the joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of Dominion patients in California, it stands to reason that the number of Class Members is at least in the hundreds.  Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as account information.

60.    *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   a.  Whether Defendants owed a duty of care to Plaintiffs and Class Members with respect to the security of their PII;

   b.  What security measures must be implemented by Defendants to comply with their duty of care;

   c.  Whether Defendants met the duty of care owed to Plaintiffs and the Class Members with respect to the security of the PII;

   d.  Whether Defendants have a contractual obligation to Plaintiffs and Class Members to use reasonable security measures;

   e.  Whether Defendants have complied with any contractual obligation to use reasonable security measures;

   f.  What security measures must be implemented by Defendants to comply with their contractual obligations to use reasonable security measures;

   g.  Whether Defendants' acts and omissions described herein violated the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E.

   h.  Whether Defendants' acts and omissions described herein violated the Federal Trade Commission Act (15 U.S.C. § 45);

     i.   What security measures, if any, must be implemented by Defendants to comply with its contractual and statutory obligations;

     j.   The nature of the relief, including equitable relief, to which Plaintiffs and Class Members are entitled; and

     k.   Whether Plaintiffs and Class Members are entitled to damages, civil penalties and/or injunctive relief.

61.    *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of each of the other Class Members, was exposed and/or improperly disclosed by Defendants.

62.    *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

63.    *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court.  Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

64.    Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

### On Behalf of the Nationwide Class and the Virginia Class

(Breach of Express And/or Implied Contractual Promise)

65.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 65, inclusive, of this Complaint as if set forth fully herein.

66.    Defendants solicited and invited Plaintiffs and Class Members to enter contracts of insurance with Defendants.  Plaintiffs and Class Members accepted Defendants' offers, became insureds of Defendants, and entered into contracts for insurance with Defendants.

67.    Defendants' Privacy Policy formed a part of its contracts with Plaintiffs and the Class Members.  While Defendants' website includes separate Privacy Policy documents for vision and dental insurance, the Privacy Policies are substantively identical; accordingly, a single Privacy Policy applies to Plaintiffs and all Class Members.  The Privacy Policy is contractually binding upon Defendants with regard to Plaintiffs and each of the Class members.

68.    The Privacy Policy describes Defendants' contractual duty to safeguard and protect Plaintiffs' and the Class Members' PII. Specifically, Defendants promised that "[o]ne of our primary goals is to safeguard your PHI. We have policies and procedures in place throughout our organization to protect your information.  These policies and procedures include:  training all employees on appropriate uses, disclosures, and protection of PHI; limiting employee system access to only the PHI needed to perform job duties; ensuring secure disposal of confidential information; using unique user IDs and passwords, etc."  Further, the Privacy Policy enumerated a limited set of entities to which Defendants could disclose the PII, and promised that any disclosure of the PII would be limited to those entities.

69.    The contractual duty to protect and safeguard Plaintiffs' and the Class Members' PII, which Defendants promised to undertake, was, even apart from the language of the Privacy Policy, a term of the contract by operation of law under the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, under Federal Trade Commission Act (15 U.S.C. § 45), and under Cal. Civ. Code §§ 1798.81.5(a)(1), (b), and (c).  Under Virginia law, all laws in place at the time a contract is entered which are relevant to the subject matter of

17

that contract become binding terms of the contract. *The Homestead Cases*, 63 Va. 266, 278 (1872) ("[I]t is well settled that all laws existing at the date of the contract for the enforcement, enter into and form a part of the obligation of the contract.") Therefore, the HIPAA Privacy Rule and Security Rule, and the FTCA, also formed a contractual term in each of Defendants' contracts with Plaintiffs and the Class Members.

70.    Finally, the promise to safeguard and protect Plaintiffs' and the Class Members' PII, and keep that PII from being accessed by third parties, was implied as a matter of law because Defendants, Plaintiffs, and the Class Members entered their agreements with the expectation and implied mutual understanding that Defendants would strictly maintain the confidentiality of the PII and safeguard it from theft or misuse.

71.    Therefore, Plaintiffs and Class Members became insureds of Defendants pursuant to the mutually agreed-upon contracts with Defendants under which Defendants agreed to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' personal information from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

72.    Plaintiffs and Class Members would not have provided and entrusted their PII to Defendants in the absence of the proper security safeguards and the promise to keep their PII safe.

73.    Plaintiffs and Class Members fully performed their obligations under their agreements with Defendants.

74.    Defendants breached the contractual promise that it made to Plaintiffs and Class Members by failing to: (a) implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) prevent unauthorized third parties from obtaining access to Plaintiffs' and Class Members' PII.

75.    Plaintiffs and Class Members have lost the benefit of their bargain with Defendants by having their PII compromised and exposed and by being placed at an imminent,

immediate and continuing risk of identity theft-related harm.  Plaintiffs and the Class Members' contractual expectation was that their PII would be safeguarded and protected.  Therefore, they paid more for Defendants' services than they would have paid had they known that their PII would not be protected.  Further, due to the fact that their PII was not protected, Plaintiffs and the Class Members incurred losses associated with the loss of PII privacy, including theft, identity theft, and the risk of theft and identity theft, along with the necessity of cancelling credit cards and paying for additional protection through the market.  Plaintiffs and the Class Members also accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

76.    As a direct and proximate result of Defendants' breaches of the contractual promises alleged herein, Plaintiffs and Class Members sustained actual losses and damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### On Behalf of the Nationwide Class and the Virginia Class

(Breach of Covenant of Good Faith and Fair Dealing)

77.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 77, inclusive, of this Complaint as if set forth fully herein.

78.    Virginia law implies a covenant of good faith and fair dealing in every contract.

79.    Plaintiffs and Class Members contracted with Defendants by accepting Defendants' offers and becoming insureds of Defendants.

80.    Plaintiffs and Class Members performed all of their duties under their agreements with Defendants.

81.    All of the conditions required for Defendants' performance under the contracts have occurred.

82.    Incorporated in the contracts as a matter of law was the covenant of good faith and fair dealing, which prevents a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.  The implied covenant imposes on a

contracting party not only the duty to refrain from acting in a manner that frustrates performance of the contract, but also the duty to do everything that the contract presupposes that the contracting party will do to accomplish its purposes.

83.     Here, the Privacy Policy, which formed a part of the contracts, provided as a term of the contracts that Defendants must protect the privacy of the PII.  Therefore, the implied covenant of good faith and fair dealing required Defendants to safeguard and protect from disclosure to third parties the PII of Plaintiffs and the Class Members which was turned over to Defendants only for the purposes of paying for insurance for medical services for Plaintiffs and the Class Members.  Plaintiffs and the Class Members could not enjoy Defendants' services without the safeguarding and protection of the PII.

84.     Defendants breached the covenant of good faith and fair dealing implied in its contracts with Plaintiffs and Class Members by engaging in the following conscious and deliberate acts: (a) failing to implement and maintain reasonable security procedures to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure; and (b) failing to ensure that unauthorized parties were not provided access to Plaintiffs' and Class Members' PII.  Defendants' failure to protect the PII of Plaintiffs and Class Members frustrated Plaintiffs' and the Class Members' rights to the benefit of their bargains with Defendants, to enjoy the financial services of Defendants without incurring risks of property and identity theft.

85.     Plaintiffs and Class Members have lost the benefit of their bargain with Defendants by having their PII compromised and have been placed at an imminent, immediate and continuing risk of identity theft-related harm.

86.     As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

**THIRD CAUSE OF ACTION**

**On Behalf of the Nationwide Class and the Virginia Class**

(Negligence)

87.     Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 87, inclusive, of this Complaint as if set forth fully herein.

88.     As described above, Defendants owed Plaintiffs and the Class Members duties of care in the handling of PII, which duties included keeping that PII safe and preventing disclosure of that PII to all unauthorized third parties.

89.     Additionally, Defendants had a duty to Plaintiffs and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII as required by HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the Federal Trade Commission Act (15 U.S.C. § 45). This legal duty arises outside of any contractual, implied or express, responsibilities that Defendants had between Plaintiffs and Class Members, as it is completely independent of any contract.

90.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."   45 C.F.R. § 164.502. HIPAA also requires that Defendants implement appropriate safeguards for this information. 45 C.F.R. § 164.530(c)(1).   HIPAA additionally requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable—i.e. non-encrypted data—to unauthorized third parties.  45 C.F.R. § 164.404; 45 C.F.R. § 164.402.

91.     Additionally, HIPAA requires that Defendants:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights, *see* 45 C.F.R. § 164.312(a)(1);
(b) Implement policies and procedures to prevent, detect, contain, and correct security violations, *see* 45 C.F.R. § 164.306(a)(1);
(c) Protect against any reasonably anticipated threats or hazards to the security or

integrity of electronic protected health information, *see* 45 C.F.R. § 164.306(a)(2);

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, *see* 45 C.F.R. § 164.306(a)(3);

(e) Ensure compliance with the HIPAA security standard rules by its workforce, *see* 45 C.F.R. § 164.306(a)(4); and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b).

92.    Plaintiffs and Class Members are within the class of persons that HIPAA was intended to protect.

93.    Defendants violated the above listed regulations by disclosing the PII to third parties and by failing to implement adequate security measures to protect the PII, including failing to:

(a) Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights;

(b) Implement policies and procedures to prevent, detect, contain, and correct security violations;

(c) Protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information;

(d) Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

(e) Ensure compliance with the HIPAA security standard rules by its workforce; and

(f) Effectively train all members of its workforce on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information.

94.    Defendants also violated §§ 164.404 and 164.402 by failing to provide timely notice of the breach to Plaintiffs and the Class Members.

95.    The harm that occurred as a result of the security breach is the type of harm that HIPAA was intended to guard against. HIPAA directly requires subject entities to protect the health information of individuals such as Plaintiffs and the Class Members.

96.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect Private

Information. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

97.     Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

98.     Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII in its stores obtained and stored, and the foreseeable consequences of a data breach at a company as large as Defendants', including, specifically, the damages that would result to Plaintiffs and Class members.

99.     The harm that occurred as a result of the security breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

100.     Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

101.     In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  Defendants owed a duty to Plaintiffs and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiffs and the Class Members.

102.     Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

103.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed PII within their computer systems on how to adequately protect PII.

104.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to implement processes that would detect a breach of their data security systems in a timely manner.

105.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to act upon data security warnings and alerts in a timely fashion.

106.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to purchase insurance or other health care services from Defendants' or to entrust PII with Defendants.

107.    Defendants owed a duty to Plaintiffs and the Class Members, who entrusted them with sensitive PII, to disclose in a timely and accurate manner when data breaches occurred.

108.    Defendants owed a duty of care to Plaintiffs and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants collected PII from Plaintiffs and the Class Members directly. Defendants knew that a breach of its data systems would cause Plaintiffs and the Class Members to incur damages.

109.    Defendants breached those duties of care by adopting inadequate safeguards to protect the PII, and, on information and belief, failing to adopt industry-wide standards in their supposed protection of the PII, resulting in the disclosure of the PII to unauthorized third parties.

110.    As a direct and proximate result of Defendants' failure to adequately protect and safeguard the PII, Plaintiffs and the Class members suffered damages. Plaintiffs and the Class Members were damaged because their PII was accessed by third parties, resulting in increased

24

risk of identity theft and theft of property, and for which Plaintiffs and the Class members were forced to adopt costly and time-consuming preventive and remediating efforts. Plaintiffs and the Class Members were also damaged in that they paid for Defendants' services in an amount that they would have refused to pay had they known that Defendants would not protect their PII. Plaintiffs and the Class Members accepted pricing terms which they would not have agreed to had they known that Defendants would not protect their PII.

111.    Defendants acted with wanton disregard for the security of Plaintiffs' and the Class Members' PII. Defendants knew or should have known that CMG had inadequate computer systems and data security practices to safeguard such information, and Defendants knew or should have known that hackers were attempting to access the PII of health care providers' databases, such as CMG's.

112.    The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and the Class Members to experience the foreseeable harm associated with the exposure of their PII.

113.    A "special relationship" exists between Defendants and Plaintiffs and the Class Members. Defendants entered into a "special relationship" with Plaintiffs and the Class Members when they contracted with Plaintiffs and the Class Members for insurance and obtained their PII from them. As providers of insurance, Defendants stand in a fiduciary or quasi-fiduciary relationship with Plaintiffs and the Class Members.

114.    Plaintiffs and the Class Members have suffered monetary injury in fact as a direct and proximate result of the acts committed by Defendants as alleged herein in an amount to be proven at trial but in excess of the minimum jurisdictional amount of this Court.

## FOURTH CAUSE OF ACTION

### On Behalf of the Virginia Class

(Virginia Personal Information Breach Notification Act)

115.    Plaintiffs repeat and incorporate herein by reference each and every allegation

contained in paragraphs 1 through 115, inclusive, of this Complaint as if set forth fully herein.

116.    Defendants are required to accurately notify Plaintiffs and the Virginia Class Members following discovery or notification of a breach of its data security system if unencrypted or unredacted PII was or is reasonably believed to have been accessed and acquired by an unauthorized person who will, or it is reasonably believed who will, engage in identify theft or another fraud, without unreasonable delay under Va. Code Ann. § 18.2-186.6(B).

117.    Defendants are entities that own or licenses computerized data that includes PII as defined by Va. Code Ann. § 18.2-186.6(B).

118.    Plaintiffs' and Virginia Class Members' PII includes personal information as covered under Va. Code Ann. § 18.2-186.6(A).

119.    Because Defendants discovered a breach of their security system in which unencrypted or unredacted personal information was or is reasonably believed to have been accessed and acquired by an unauthorized person, who will, or it is reasonably believed who will, engage in identify theft or another fraud, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Va. Code Ann. § 18.2-186.6(B).

120.    By failing to disclose the data breach in a timely and accurate manner, Defendants violated Va. Code Ann. § 18.2-186.6(B).

121.    As a direct and proximate result of Defendants' violations of Va. Code Ann. § 18.2-186.6(B), Plaintiffs and Virginia Class Members suffered damages, as described above.

122.    Plaintiffs and Virginia Class Members seek relief under Va. Code Ann. § 18.2-186.6(I), including actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for relief as follows:

1.    For compensatory damages in an amount according to proof at trial;

2.    For affirmative injunctive relief mandating that Defendants implement and maintain reasonable security procedures and practices to protect Plaintiffs' and Class Members'

PII from unauthorized access, destruction, use, modification, or disclosure;

      3.      For costs of suit and litigation expenses;

      4.      For attorneys' fees under the common fund doctrine and all other applicable law; and

      5.      For such other and further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable in accordance with Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: August 14, 2019                    Respectfully submitted,

**HALPERIN LAW CENTER, LLC**

/s/ *Jonathan E. Halperin*
Jonathan E. Halperin – (VSB No. 32698)
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
Telephone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law

**WILSHIRE LAW FIRM**

/s/ *Thiago M. Coelho*
Bobby Saadian*
Justin F. Marquez*
Thiago M. Coelho*
Robert J. Dart*
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
bobby@wilshirelawfirm.com
justin@wilshirelawfirm.com
thiago@wilshirelawfirm.com
rdart@wilshirelawfirm.com
(* *pro hac vice forthcoming*)

*Attorneys for Plaintiffs and
the proposed class*

27